Donald W. KREUZER, D.M.D., Plaintiff,

v.

AMERICAN ACADEMY OF PERIODON-
TOLOGY, Defendant.

Civ. A. No. 77-1739.

United States District Court,
District of Columbia.

March 10, 1983.

John F. Dienelt, Brownstein, Zeidman &
Schomer, Washington, D.C., for plaintiff.

Mark W. Foster, Zuckerman, Spaeder,
Moore, Taylor & Kolker, Washington, D.C.,
for defendant.

MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

The facts of this case are set forth more fully in this Court's Memorandum Opinion of June 10, 1981, reported at 516 F.Supp. 1034. Essentially, plaintiff, a dentist, charges that defendant, the American Academy of Periodontology (AAP), has violated the antitrust laws by denying him active membership in the organization. The AAP limits active membership, its highest degree of membership, to those dentists who certify that they limit their practices to the specialized field of periodontology, which, generally speaking, is a practice concerned with the gums and supporting tissue of the teeth and diseases afflicting those areas. Plaintiff has been granted associate membership in the AAP, but has been denied active membership because he does not limit his practice to the field of periodontics as defined by the AAP and the American Dental Association (whose standards the AAP looks to). Plaintiff's practice includes prosthedontics, or restorative dentistry. Active members are entitled to certain benefits unavailable to associate members; these include the right to vote on AAP matters, to hold office in the organization, and—most importantly to plaintiff—to be listed as an active member in the Academy's membership directory. Plaintiff is listed in the Directory, but asserts that since his name is accompanied by a notation

identifying him as an associate, he does not receive the same number of referral patients that he would were he listed as an active member.

Previously, this Court granted summary judgment in favor of defendant American Dental Association on the ground that the plaintiff had not established sufficient proof of the antitrust conspiracy he alleged against that defendant. 516 F.Supp. at 1040. The AAP's motion for summary judgment was not ruled upon at that time in light of the pendency of its motion to compel plaintiff to produce certain records pertaining to his practice. That motion was granted, and the parties were given the opportunity to file additional briefs. For the reasons which follow, the Court finds that the practices and policies of the AAP complained of by plaintiff do not violate the antitrust laws and therefore grants the AAP's motion for summary judgment.

Practices like AAP's generally have been held not to constitute *per se* violations of the Sherman Antitrust Act. With respect to professions, as opposed to commercial businesses, the *per se* standard has been "particularly restricted." *Paralegal Institute, Inc. v. American Bar Association,* 475 F.Supp. 1123, 1128 (S.D.N.Y.1979), *aff'd mem.* 622 F.2d 575 (2d Cir.1980), citing *National Society of Professional Engineers v. United States,* 435 U.S. 679, 686, 98 S.Ct. 1355, 1362, 55 L.Ed.2d 637 (1978); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 788–89 n. 17, 95 S.Ct. 2004, 2013 n. 17, 44 L.Ed.2d 572. In *Goldfarb,* the Supreme Court concluded that:

> The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining whether that particular restraint violates the Sherman Act. It would be unreasonable to view the practices of professions as interchangeable with other business activities, and automatically to apply to the professions antitrust concepts which originated in other areas. The public service aspect, and other features of the professions, may require that a particular practice, which could properly be viewed

as a violation of the Sherman Act in another context, be treated differently. 421 U.S. at 788, n. 17, 95 S.Ct. at 2013 n. 17. Accordingly, "ethical norms" established by the professions may serve to "regulate and promote [the type of competition peculiar to them], and thus fall within the Rule of Reason." *Professional Engineers,* 435 U.S. at 696, 98 S.Ct. at 1367. *Professional Engineers* was cited for this principle by another district court in a case involving an antitrust challenge by a group of physicians to a hospital referral system. Before granting summary judgment in favor of defendants, the court noted that "[p]rofessionally established quality norms that are not expressly designed to eliminate competition should be governed by the rule of reason." *Smith v. Northern Michigan Hospitals, Inc.,* 518 F.Supp. 644, 650 (W.D.Mich.1981).

On their face, the AAP's membership regulations serve a noncommercial purpose, that of ensuring that the highest level of membership in an organization designed to promote high standards in a professional field, is restricted to those who, by limiting their work to that specialty, are more interested than anyone else in the advancement of that profession. The AAP's rules do not fix prices, create territorial restrictions, or contain covenants not to compete. *Compare Arizona v. Maricopa County Medical Society,* —— U.S. ——, —— – ——, 102 S.Ct. 2466, 2477–78, 73 L.Ed.2d 48 (1982) (doctors' price-fixing agreement *per se* unlawful under Sherman Act). Nothing in those rules restricts plaintiff in any way from performing the work he desires to perform and in which he in fact is engaged. As such, the rules concern a distinctly noncommercial aspect of the profession of periodontology. *See Boddicker v. Arizona State Dental Association,* 549 F.2d 626, 650 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977).

Nor can it be said that the AAP's membership requirements have been applied to plaintiff in an arbitrary or discriminatory manner. Plaintiff has admitted to the AAP that he does not meet the practice limitation requirement of active member-

ship, and, as a result, the AAP has restricted him to associate membership. In support of his assertion that he has not been treated equally, plaintiff points out that some AAP members listed in its 1979 directory are denoted as active even though their names lack the separate notation indicating that they have certified to the academy their limitation of practice to periodontology. However, this does not prove disparate treatment. On the page of the directory explaining these symbols is the following caveat:

> The designation "L" following the name indicates that on the date this Directory went to press, the member had indicated to the Central Office of the American Academy of Periodontology that his practice is limited to periodontology for the current year. Absence of the "L" designation does not mean necessarily that the member does not limit his practice; it does suggest that he has not complied with the Bylaws of the American Academy of Periodontology which require that limitation of practice be certified annually by January 31.

Exhibit D to Plaintiff's Memorandum, p. 3 (italics in original). Moreover, with respect to those members of the AAP whom plaintiff identified as not limiting their practice although carrying active status, the record show that the AAP has made inquiries of those members to determine their compliance with the rule. The record also shows that the AAP has, as the result of such inquiries, changed the status of members not limiting their practice to that of associate membership.

Finally, the existence of a grandfather clause in the requirements for active membership does not render the AAP's regulations arbitrary or discriminatory. In light of the fact that the Supreme Court has held that a grandfather clause in a state statute requiring certification of physicians is permissible, *Watson v. Maryland,* 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910), another district court has found nothing impermissible about such a clause in the membership requirements of the private American Dental Association. *Dietz v. American Dental*

*Association,* 479 F.Supp. 554, 560–61 (E.D. Mich.1979).

Accordingly, inasmuch as the AAP's practices here are not "manifestly anticompetitive," *see Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977), the rule of reason shall govern the question of the AAP's liability under the antitrust laws.

■ Under the rule of reason, the inquiry the Court must make is whether the challenged provision is one that promotes competition or one that suppresses competition. *Professional Engineers,* 435 U.S. at 691, 98 S.Ct. at 1365, citing *Continental T.V.,* 433 U.S. at 49 n. 15, 97 S.Ct. at 2557 n. 15, and quoting *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918). Plaintiff argues that the AAP's regulations suppress competition because his failure to be listed as an active member causes him not to receive the referrals that he asserts he otherwise would receive. Plaintiff has supplied affidavits to the effect that some practitioners will refer periodontology patients only to active members of the academy, and states that because of the unusually transient nature of the Washington metropolitan population, referral business is of particular importance to those who practice here, as does plaintiff. Nevertheless, the fact that a restraint might conceivably have *some* anticompetitive effect does not render it necessarily a violation of the Sherman Act under this analysis. *Smith v. Pro Football, Inc.,* 593 F.2d 1173, 1188–89 (D.C.Cir.1978) (football league player draft could survive rule of reason scrutiny if demonstrated to have offsetting procompetitive benefits or if shown that not anticompetitive effect insubstantial).

■ A rule, regulation, or practice of a professional organization can survive a challenge under the antitrust laws if it "serve[s] the purpose for which the profession exists, *viz.* to serve the public. That is, it must contribute directly to improving service to the public." *Boddicker v. Arizona State Dental Association,* 549 F.2d at

630. In a case before another district court involving a physician's antitrust challenge to the decision of two hospitals to deny him staff privileges, before entering judgment for the defendants the court noted that "in the absence of anticompetitive interest or purpose, proof that Defendants acted for the primary purpose of maintaining high quality patient care is a persuasive defense to an antitrust claim." *Williams v. Kleaveland,* 534 F.Supp. 912, 919 (W.D.Mich.1981).

In the case at bar, there is no evidence of anticompetitive intent—only a philosophical difference of opinion as to what the professional practice of one who considers himself a specialist in periodontology should entail. It is an intellectual dispute between plaintiff, who is among those who believe that restorative dentistry plays a part in the cure of periodontal disease, and the AAP, which takes the position that, except to the extent that improperly-constructed restorations may contribute to periodontal disease, properly performed reconstructive work has nothing to do with halting the progress of such disease. AAP's Reply to Plaintiff's Response to Second Supplemental Memorandum, at 7. To award the plaintiff the relief he seeks would require this Court to resolve this scientific disagreement among professionals in favor of one disputant and compel the AAP to change its definition of the specialization of periodontology. In *Williams v. Kleaveland,* that court stated that it was its "view that physicians themselves are best able to evaluate the competence and skill of another physician and to take appropriate action in the public interest." 534 F.Supp. at 919. So it is with the question of the bounds of the field of periodontology: this is a discussion best left to those professionals. *Accord, Nara v. American Dental Association,* 526 F.Supp. 452, 458 (W.D.Mich.1981) (dental association rule prohibiting a dentist from holding himself out as a specialist in a "specialty" not professionally recognized or regulated appeared to have purpose of protecting lay public from assuming that a purported specialist was more qualified than nonspecialists; viewed not to be type of restraint prohibited by Sherman Act).

Finally, and although unnecessary to the Court's holding today, it is noted that the record shows that despite plaintiff's designation as an associate member in the AAP, he nonetheless continues to receive referral work and enjoys a successful and evidently well-regarded dental practice.

In accordance with the foregoing, it is, by the Court, this 10th day of March, 1983,

ORDERED, that defendant's motion for summary judgment be and hereby is granted.