Mary E. MATHESON, Petitioner,

v.

PRACTICAL NURSES' EXAMINING BOARD, Respondent.

No. 3313.

District of Columbia Court of Appeals.

Argued Oct. 14, 1963.

Decided Nov. 20, 1963.

Dewey M. Carr, Washington, D. C., for petitioner.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

This is an appeal from a decision of the Practical Nurses' Examining Board denying petitioner's application for a license by waiver.[1] As in Corbett v. Kinlein, D.C. App., 191 A.2d 246 (1963), the Board's action was based solely on petitioner's failure to comply with subsection (A) (4), the District's one-year experience requirement. Petitioner's application met the statutory standards in all other respects.

In the case at bar, the record discloses that petitioner had been actively engaged in caring for the sick for six months and

1. Code 1961, 2–429 provides: "Upon receipt of an application, accompanied by the required fee for an orginal license, the Commissioners shall issue a license to practice as a licensed practical nurse, without written examination, to any person who shall make application therefor prior to the expiration of one year immediately following the effective date of this subchapter: *Provided*, That (A) the Commissioners find that such person (1) is at least twenty-one years of age; (2) is of good moral character; (3) is in good physical and mental health as certified by a physician licensed to practice in the District of Columbia; (4) has been actively engaged in caring for the sick in the District of Columbia for the year immediately preceding the effective date of this subchapter; (5) has had three or more years of experience in the care of the sick prior to the effective date of this subchapter; and (6) has submitted evidence satisfactory to the Commissioners that she is competent to practice as a licensed practical nurse, and (B) either the application is endorsed by two physicians licensed to practice in the District of Columbia who have personal knowledge of the applicant's nursing qualifications and by two persons who have employed the applicant in the capacity of practical nurse, or the applicant is listed on a nurses' registry licensed in the District of Columbia."

twenty-nine days during the one-year period.[2] In Corbett the record disclosed that petitioner had been actively engaged in caring for the sick for seven and one-half months during the one-year period. Under these circumstances, and after reviewing the legislative history and regulations surrounding the act, we held:

> " * * * that an application, such as petitioner's, which substantially complies with the statutory provisions may not be denied unless the applicant has a fair opportunity to meet the Board's challenge to his qualifications and unless this court is apprised of the basis of the finding against him. While the procedure of the Board may be informal, it must conform to recognized standards of fairness and a record must be made which permits review of the Board's action by the court." [3]

Here petitioner submitted her application on January 1, 1962. On January 8, 1963, the Board rejected the application[4] noting "no evidence of 1 year D. C. employment." Petitioner's counsel wrote the president of the Board on January 12, 1963, requesting a review of the application. On January 22, 1963, the president replied commenting on the difficulty in processing petitioner's application and concluding:

> "The Board is not rigid. We accept, for example, nine (9) months nursing experience as evidence of meeting the one (1) year required by law, July 29, 1960–61. Miss Matheson's completed application showed but five (5) months, twelve (12) days per her own listings. * * *"

On February 1, 1963, petitioner's counsel requested an appointment to discuss the matter personally. An appointment was arranged for February 19, 1963, but the record fails to disclose the matters discussed, the parties present, or the results of the meeting. On April 18, 1963, petitioner's counsel again wrote the Board suggesting an alternative ground for granting the license. On April 29, 1963, the executive secretary answered this last letter stating that petitioner's contention was invalid. On May 10, 1963, the petition for review was filed in this court.

■ At the outset we are met by respondent's argument that the petition for review was not timely filed. The rules of this court provide:

> "Any person seeking a review of a final order or decision of a Board or Commission in accordance with the aforementioned Act shall, within 15 days from the date of having been given formal notice of such order or decision, file with the Clerk of this Court, a petition for review." [5]

Respondent contends that the February 19 meeting sustained the previous decision of the Board, and that this action constituted notice to petitioner of the Board's order or decision. Principal reliance is placed on Valentine v. Real Estate Commission, D.C.Mun.App., 163 A.2d 554 (1960), where we dismissed an appeal filed on the sixteenth day holding that the fifteen-day rule was jurisdictional and not discretionary. In Valentine, however, the petitioner had been granted a full public hearing to challenge the action of the Commission. Thereafter, the petitioner was given "formal notice" of the Commission's decision suspending her license. In the case at bar there is a serious gap in the record. We have no evidence indicating that petitioner received "formal notice" after the February 19 meeting that her application had been rejected. Furthermore, since petitioner's

---

2. Respondent's assertion set forth *infra* that petitioner's application showed but five months and twelve days' experience is not supported by the record.

3. Corbett v. Kinlein, D.C.App., 191 A.2d 246, 247–248 (1963).

4. The long delay resulted largely from petitioner's submission of an incomplete application.

5. Rule 1, Rules Governing Review of Orders and Decisions of District of Columbia Administrative Agencies (1958).

contacts with the Board were informal, she could rightfully assume that her administrative remedies had not been exhausted. Significantly, the letter of April 18 indicates that it was upon the suggestion of respondent's counsel that additional administrative review was requested. Consequently, we find Valentine inapplicable and hold that the petition for review was timely filed.

█ In an effort to distinguish Corbett respondent has contended that petitioner was accorded an informal hearing and that a fair opportunity was thus presented to challenge the Board's finding.[6] Such a view misconstrues the nature and extent of our ruling. We held not only that fairness required an opportunity to be heard, but that the court must be apprised of the basis of the Board's finding to permit proper appellate review. Examining the administrative regulations,[7] we find that in all cases where a formal hearing is held the Board's decision must contain:

"(a) finding of fact made by the Board;

(b) application by the Board of these Regulations to the facts as found by the Board; and

(c) the order of the Board based upon (a) and (b) of this Section." [8]

We hold that findings of a similar nature are necessary when an informal hearing is granted to review the denial of a license under Code Section 2–429.

█ Finally, the statement in the record that the Board considers nine months' nursing experience as satisfying the one-year requirement does not, of itself, clothe the

Board's decision with a "reasonable basis in law." We can as easily say that this determination by the Board was based upon arbitrary considerations as upon an exercise of its professional expertise. The Board made no attempt to relate its conclusion to standards in the nursing profession or the purposes enunciated by Congress in passing the legislation. In an analogous situation, Mr. Justice Frankfurter said:

"Congress has seen fit to subject to judicial review such orders of the Securities and Exchange Commission as the one before us. That the scope of such review is narrowly circumscribed is beside the point. For the courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review. If the action rests upon an administrative determination—an exercise of judgment in an area which Congress has entrusted to the agency— of course it must not be set aside because the reviewing court might have made a different determination were it empowered to do so. But if the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law. In either event the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained. * * * In finding that the Commission's order cannot be sustained, we are not imposing any trammels on its powers. We are not enforcing formal requirements. We are not suggesting that the Commission must justify its exercise of administrative dis-

---

6. Code 1961 (Supp.1963), Title 1, Administion, Appendix, Reorganization Order No. 59, Par. XII, Section C provides that at least two of the practical nurse members of the Board shall be present at each meeting. Nevertheless, the record does not indicate that this condition was met at the "informal hearing" allegedly ac-

corded petitioner. Compare District of Columbia Regulations 12–2256 (1961).

7. District of Columbia Regulations 12–2201 et seq. (1961).

8. District of Columbia Regulations 12–2264 (1961).

cretion in any particular manner or with artistic refinement. We are not sticking in the bark of words. We merely hold that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." (Citations omitted.) [9]

We remand to the Board for the purpose of reconsidering petitioner's application and with directions to conduct such further proceedings, not inconsistent with this opinion, as may be appropriate.

It is so ordered.

9. Securities and Exchange Comm. v. Chenery Corp., 318 U.S. 80, 94–95, 63 S.Ct. 454, 462–463, 87 L.Ed. 626 (1943). Compare Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).